UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JUDAH HUGGINS                                              PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:17CV799TSL-RHW

QUEEN CITY PROPERTIES, INC.,
INN SERVE CORP., STEVE
ANDERSON AND JEREMY CAMPBELL                               DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants
Inn City Corp., Queen City Properties, Inc. (collectively "Queen
City"), Steve Anderson and Jeremy Campbell for summary judgment
pursuant to Rule 56 of the Federal Rules of Civil Procedure.
Plaintiff Judah Huggins has responded in opposition to the motion
and the court, having considered the memorandum of authorities,
together with attachments, submitted by the parties, concludes
that the motion should be granted in part and denied in part, as
set forth below.

I. Background Facts

Queen City owns and operates Hilton Garden Inn (HGI) in
Meridian, Mississippi. Defendant Steve Anderson is the general
manager of HGI, and defendant Jeremy Campbell is HGI's sales
director/assistant general manager. Plaintiff Huggins, an
African-American female, was employed by Queen City at the HGI in
various capacities from 2014 until her termination in February
2017. Following her termination, she filed the present action

against defendants alleging she was denied equal pay, subjected to a hostile work environment and ultimately terminated on account of her gender and/or race and/or in retaliation for having complained of unequal pay, all in violation of the Equal Pay Act, 29 U.S.C. § 206, and/or Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. and/or 42 U.S.C. § 1981. In addition to these federal claims, she asserts state law claims for negligent and intentional infliction of emotional distress, defamation and false light invasion of privacy.

The following are the basic facts giving rise to this action, construed in the light most favorable to plaintiff. In May 2014, Anderson hired plaintiff as a desk clerk. Her pay was $10 an hour. By late 2015, she had received a number of raises and had been promoted to the position of Guest Services Manager on Duty, earning $14 an hour. In the spring of 2016, she was again promoted, to Administrative Assistant, with a pay raise to $15 an hour. At the time, Sam Davis was HGI's assistant general manager (AGM). However, in December 2015, Davis was hired as the general manager for the Meridian Hampton Inn, another Queen City hotel, and began a process of preparing to transition to his new position. Plaintiff asserts that in anticipation of Davis's departure, Anderson directed Davis to begin training her to take over his duties as AGM. When Davis did ultimately transfer to the

Hampton Inn in mid-2016, she assumed his duties as AGM becoming, in effect, the *de facto* AGM.

Plaintiff asserts that not only did she take over Davis's duties as AGM, but she continued to perform her duties as administrative assistant; and, in addition, at Anderson's direction, she assisted with Campbell's sales duties as Anderson was concerned that Campbell was letting a lot of things "fall through the cracks," as, for example, by failing to set up events he had booked for the hotel and to return phone calls and respond to emails. Given the amount of work she was performing, plaintiff presented Anderson with a letter on October 3, 2016 detailing her many job duties at HGI and requesting a pay raise to $50,000 a year. According to plaintiff, Anderson responded that while he could not approve the $50,000, she could have a raise; and he said that although he could not provide her a raise at that time, a raise was "in the system" and should become effective at the beginning of the year.

Plaintiff heard nothing further from Anderson on the subject until Tuesday, January 17, 2017, when he walked into her office and gave her a letter promoting her, effective January 2, 2017, to AGM/Administrative Assistant/Sales, with an accompanying raise to $17 an hour. Less than a week later, however, on Monday, January 23, 2017, he suspended her, ostensibly for having tampered with/falsified the result of the employees' votes for the 2016

Associate of the Year Award.  When confronted with the allegation that she had manipulated the election, plaintiff denied the charge; but despite her denial, Anderson immediately suspended her pending an investigation.  Two weeks later, on February 6, following the investigation, she was terminated.

Following her termination, plaintiff applied to the Mississippi Employment Security Commission (MESC) for unemployment benefits.  Defendants opposed her application and reported to the the MESC that she was terminated for misconduct, that is, for tampering with the vote for Associate of the Year.  While her claim for benefits was initially denied, on appeal, she was awarded benefits.

II. <u>Summary Judgment Standard</u>

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating that there are no genuine issues of material fact.  Once the movant meets its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists" and that summary judgment should not be granted. <u>Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship</u>, 520 F.3d 409, 412 (5th Cir. 2008).  In response to a properly

supported summary judgment motion, the nonmovant must "come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." Piazza's Seafood World, LLC v. Odom, 448 F.3d 744, 752 (5th Cir. 2006).

In considering a motion for summary judgment, the court views all facts, and all reasonable inferences to be drawn from them, in the light most favorable to the nonmovant. DIRECTV, Inc. v. Budden, 420 F.3d 521, 529 (5th Cir. 2005). "If the record, viewed in the light most favorable to non-movant, could not lead a rational trier of fact to decide in non-movant's favor, summary judgment is appropriate." Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). But if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. "Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" Firman v. Life Ins. Co. of N. Am., 684 F.3d 533, 538 (5th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986)).

III. Federal Claims:

Discrimination: Unequal Pay

Plaintiff has brought claims relating to her pay under the Equal Pay Act, Title VII and § 1981, each of which prohibits wage

5

discrimination.[1]  Plaintiff contends she and Campbell's positions

required equal skill and effort and that she had "way more

responsibilities" than Campbell and yet was paid less.  The Equal

Pay Act (EPA) prohibits a covered employer from discriminating

"between employees on the basis of sex ... for equal work on jobs

the performance of which requires equal skill, effort, and

responsibility, and which are performed under similar working

conditions."  29 U.S.C. § 206(d)(1).  "In short, it demands that

equal wages reward equal work."  Siler-Khodr v. Univ. of Texas

Health Sci. Ctr. San Antonio, 261 F.3d 542, 546 (5th Cir. 2001)

(citing Corning Glass Works v. Brennan, 417 U.S. 188, 195, 94 S.

Ct. 2223, 41 L. Ed. 2d 1 (1974)).  To establish a *prima facie* case

of wage discrimination under the EPA, "a plaintiff must show that

the employer pays different wages to men and women, the employees

perform 'equal work on jobs the performance of which requires

equal skill, effort, and responsibility,' and the employees

---

[1]     It is not clear whether plaintiff has sued all
defendants, or just Queen City, for wage discrimination.  Relief
under Title VII is available only against the "employer", which
would be Queen City; under § 1981, relief is also available
against individual supervisor or fellow employee.  Foley v. Univ.
of Houston Sys., 355 F.3d 333 (5th Cir. 2003).  Like Title VII,
the Equal Pay Act applies only to an "employer," but the the Fifth
Circuit has found the definition of "employer" under the EPA is
"sufficiently broad to encompass an individual who ... effectively
dominates its administration or otherwise acts, or has the power
to act, on behalf of the corporation vis-a-vis its employees...."
Donovan v. Sabine Irrigation Co., 695 F.2d 190, 194-95 (5th Cir.
1983).

perform their jobs 'under similar working conditions.'"
Thibodeaux-Woody v. Houston Cmty. Coll., 593 F. App'x 280, 283
(5th Cir. 2014) (quoting 29 U.S.C. § 206(d)(1)).  Once the
plaintiff establishes a *prima facie* case to show unequal wages for
equal work, the burden shifts to the employer to prove by a
preponderance of the evidence that the wage differential is
justified under one of the [EPA's] four exceptions, namely,
"(1) a seniority system; (2) a merit system; (3) a system which
measures earnings by quantity or quality of production; or (4) any
other factor other than sex."  Id.; 29 U.S.C. § 206(d)(1).

    Whereas the EPA prohibits wage discrimination based on sex,
Title VII makes it unlawful for an employer to "discriminate
against any individual with respect to his compensation ...
because of such individual's race ... [or] sex...."  42 U.S.C.
§ 2000e-2(a).  And, Section 1981 prohibits wage discrimination on
the basis of race.  Pegram v. Honeywell, Inc., 361 F.3d 272 (5th
Cir. 2004).  Title VII and § 1981 are parallel causes of action,
with each requiring proof of the same elements to establish
liability.  Foley v. Univ. of Houston Sys., 355 F.3d 333 (5th Cir.
2003).  To establish a *prima facie* case of wage discrimination
under Title VII and § 1981, a plaintiff must show that she was a
member of a protected class and that she was paid less than a
non-member for work requiring substantially the same
responsibility.  Taylor v. United Parcel Serv., Inc., 554 F.3d

510, 522 (5th Cir. 2008). Pursuant to the burden-shifting framework of McDonnell Douglas, "a plaintiff's *prima facie* case creates an inference of ... discrimination," which the employer must rebut by offering a legitimate non-discriminatory reason for the pay disparity. Id. If the employer provides such a reason, the burden shifts back to the plaintiff to establish by a preponderance of the evidence that the employer's reasons are a mere pretext for discrimination. Id.; Montgomery v. Clayton Homes Inc., 65 F. App'x 508 (5th Cir. 2003) (citations omitted).[2]

To establish a *prima facie* case under any of these laws, the plaintiff is not required to show that her job duties were *identical* to those of higher paid male employees, but that they were "nearly identical" or "substantially equal" in terms of the "skill, effort and responsibility" required in the performance of the compared jobs. See Peters v. City of Shreveport, 818 F.2d

---

[2] "Generally, ... a Title VII claim of wage discrimination parallels that of an EPA violation." Montgomery v. Clayton Homes Inc., 65 F. App'x 508 (5th Cir. 2003). However, while the EPA's burden-shifting framework is similar to the McDonnell Douglas burden-shifting framework that applies in Title VII (and § 1981) cases, it is not identical. Niwayama v. Texas Tech Univ., 590 F. App'x 351, 358-59 (5th Cir. 2014). Under the EPA, the defendant bears the burden of persuasion to prove a defense under the EPA, whereas under Title VII analysis, it has only a burden of production to articulate a legitimate nondiscriminatory reason for its actions under Title VII, with the ultimate burden of persuasion remaining with the plaintiff. King v. Univ. Healthcare Sys., L.C., 645 F.3d 713, 724 (5th Cir. 2011).

1148, 1153 (5th Cir. 1987); <u>Reznick v. Associated Orthopedics &</u>
<u>Sports Med., P.A.</u>, 104 F. App'x 387, 390 (5th Cir. 2004) (EPA
plaintiff "must show that her job
requirements and performance were substantially equal, though not
necessarily identical, to those of a male employee.") (citing 29
C.F.R. § 1620.13(e)); <u>Taylor</u>, 553 F.3d at 523.

The parties herein have provided descriptions of Campbell's
and plaintiff's respective job titles, skills, experience,
education and certifications.  They have also listed various
duties each performed.  Yet the evidence presented is not
altogether illuminating as to the actual skills, effort or
responsibilities of either's position.  Consequently, the court is
unable at this time, on this record, to state as a matter of law
that plaintiff's and Campbell's positions did not involve
substantially similar skill, effort and responsibility.
Therefore, the court finds that summary judgment should not be
entered and that instead, the better course is to proceed to trial
so that the decision on the issue may be made on a more fully-
developed record.

<u>Race/Gender Discrimination: Termination</u>

Plaintiff alleges she was terminated on account of her gender
in violation of Title VII, and her race, in violation of Title VII
and § 1981.  To establish her *prima facie* case, plaintiff must
show that she (1) is a member of a protected group; (2) was

qualified for her position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of her protected class or was treated less favorably than similarly situated employees outside the protected group. McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). If she makes a *prima facie* showing, the burden shifts to defendants to articulate (not prove) a legitimate, non-discriminatory reason for the challenged decision. Id. Once such a reason is offered, plaintiff then has the burden to prove that the proffered reason is not true but is a pretext for the real discriminatory purpose. Id.

Defendants contend they are entitled to summary judgment on plaintiff's claims for discrimination relating to her termination both because plaintiff cannot establish her *prima facie* case as she cannot show that she was replaced by someone outside her protected group or that any similarly situated employee outside her protected group was treated more favorably, and because, even if she could establish a *prima facie* case, she cannot establish that the reason cited for her termination was pretext for discrimination. Defendants are correct on both points.

While plaintiff contends that she was replaced by both Anderson and Campbell, evidence presented by defendants plainly shows that after plaintiff was terminated, Campbell and Anderson initially performed her job duties only until her position was

filled by Brianna Bebley, who, like plaintiff, is an African-American female. Plaintiff further argues that Campbell was treated more favorably "as he (and Anderson) eliminated the role of AGM held by Huggins. Campbell an AGM was treated more favorably and Huggins was suspended and terminated." The court is unsure what plaintiff means by this. However, the court is sure that plaintiff has not shown that Campbell was treated more favorably than her under nearly identical circumstances. It follows that defendants are entitled to summary judgment on these claims.

The court further concludes that even assuming plaintiff's evidence could be considered sufficient to create a triable issue on all the elements of her *prima facie* case, defendants are nevertheless entitled to summary judgment as she has not demonstrated pretext. Defendants assert that plaintiff was terminated based on allegations by two HGI employees, Ashley Moore and Catherine Henry, that plaintiff made statements to them insinuating, if not outright stating, that she rigged the vote for Associate of the Year so that her good friend, Brianna Bebley would win, and the two of them could/would split the $250 prize money. Plaintiff adamantly denies the charge and contends that defendants' purported investigation was a sham. Defendants, she asserts, were not interested in the truth but rather used the allegation that she manipulated the results of the vote as an

excuse to terminate her. Their real motivation, she claims, was her race and/or gender and/or retaliation for her having complained about her pay.

For purposes of evaluating defendants' motion, the court assumes that plaintiff did not, in fact, manipulate or falsify the results of the employee vote for Associate of the Year. But that is not the issue. Rather,

> [t]he real issue is whether the employer reasonably believed [her co-employees'] allegation and acted on it in good faith, or to the contrary, the employer did not actually believe the [co-employees'] allegation but instead used it as a pretext for an otherwise discriminatory dismissal. Thus, the inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief.

Waggoner v. City of Garland, Tex., 987 F.2d 1160, 1165 (5th Cir. 1993). Plaintiff points to a number of putative facts, primarily relating to the credibility of her accusers and the alleged absence of a good faith investigation, which she contends demonstrate, circumstantially, that defendants did not actually believe the accusations against her but rather seized on them as an excuse to terminate her for discriminatory reasons. She contends, for example, that Ashley Moore, one of her accusers, waited almost three weeks to report the alleged statements and yet was never asked why she waited so long to complain; Anderson ordered a re-vote before even speaking with Moore or conducting an investigation; Anderson suspended her before an investigation was

done and before the re-vote was completed; Brittany Smith, another co-worker who was present at the time of the alleged statements, when interviewed, denied that the incident occurred; Anderson terminated her employment before even discussing the allegations with Brianna Bebley, plaintiff's friend with whom she allegedly said she planned to split the prize money; and no one ever asked her (Huggins) why she had someone else (namely Mareeka Toole) count the ballots instead of counting them herself; and no one ever interviewed Toole about the voting process. She asserts, moreover, that neither Moore nor Smith ever made a written complaint but rather only made a verbal accusation weeks after the incident; that no notes were made of any of the interviews; and the ballots from the original vote were not retained. In short, she claims her accusers were of doubtful credibility and defendants' investigation was "defective, insufficient and flawed", all of which suggests that the reason given for her termination was contrived to cover up defendants' true, discriminatory motivation.

"[I]in the case of an allegedly flawed investigation, a plaintiff must do more than show defendant's mistaken belief regarding the investigation's conclusions to survive summary judgment—plaintiff must show that defendant's belief was dishonest and masked a discriminatory purpose." Hinga v. MIC Group LLC, 13-0414, 2014 WL 4273887 at *3 (S.D. Tex. Aug. 29, 2014) (citing

Swenson v. Schwan's Consumer Brands N. Am., Inc., 500 F. App'x 343, 346 (5th Cir. 2012), and Waggoner, 987 F.2d at 1166); see also Cheshire v. Air Methods Corp., No. CV 3:15-0933, 2016 WL 3029965, at *9 (W.D. La. May 25, 2016) (citations omitted)) ("Faulty investigations do not necessarily demonstrate pretext."). Here, the record evidence belies the salient aspects of plaintiff's version of the "facts" of the investigation, and the undisputed true facts established by the record do not support her charge that defendants' investigation was a sham, designed to mask a discriminatory motive.

The true facts, as disclosed by the record evidence, are that Ashley Moore promptly reported the incident to Campbell via text message, but Campbell was out of town at the time and unable to meet with her until his return. Moreover, Moore and Henry, after giving verbal statements, were asked to and did give written statements regarding the incident. Notably, too, Anderson has testified that he had known Henry a long time and he considered her, in particular, to be especially trustworthy and thus had reason to believe that what she said was true. In addition, contrary to plaintiff's characterization, Smith, when interviewed, did not say the incident did not occur. Rather, she merely said that while she was in the room when the statements were allegedly made, she did not hear them herself. In light of these facts, the court is not persuaded that plaintiff has come forward with

sufficient evidence of pretext to withstand summary judgment.
Therefore, the court will grant summary judgment for defendants on
her claim for discriminatory termination.

Retaliation

Plaintiff alleges she was terminated in retaliation for
having complained to Anderson about "the disparate pay issue".
The EPA, Title VII and § 1981 prohibit retaliation against an
employee for complaining about prohibited discrimination. See 29
U.S.C. § 215(a)(3) (making it unlawful "to discharge or in any
other manner discriminate against any employee because such
employee has filed any complaint" alleging a violation of the
EPA); 42 U.S.C. § 2000e-3(a) (making it unlawful to discriminate
against an employee because she has "opposed any practice made an
unlawful employment practice by this subchapter, or because he has
made a charge ... under this subchapter."); CBOCS W., Inc. v.
Humphries, 553 U.S. 442, 448, 128 S. Ct. 1951, 1956, 170 L. Ed. 2d
864 (2008) (interpreting § 1981 to encompass retaliation claim).[3]
To establish a *prima face* case of retaliation, plaintiff must show
that: (1) she participated in protected activity; (2) her employer
took an adverse employment action against her; and (3) a causal
connection exists between the protected activity and the adverse

_____

        [3]     In the retaliation count of her complaint, plaintiff
alleges retaliation in violation of "both Title VII and Section
1981"; she does not refer to the EPA.

employment action.  Banks v. E. Baton Rouge Parish Sch. Bd., 320

F.3d 570, 575 (5th Cir. 2003); Foley v. Univ. of Hous. Sys., 324

F.3d 310, 316 (5th Cir. 2003).  An informal, internal complaint to

an employer regarding a violation of EPA, Title VII or § 1981 may

constitute protected activity.  Hagan v. Echostar Satellite LLC,

529 F.3d 617, 626 (5th Cir. 2008); Tureaud v. Grambling State

Univ., 294 F. App'x 909, 914-15 (5th Cir. 2008).  However, the

employee's complaint must concern "some violation of law."  Hagan,

529 F.3d at 626.  That is, it "must at least alert an employer to

the employee's reasonable belief that unlawful discrimination is

at issue."  Brown v. United Parcel Serv., Inc., 406 F. App'x 837,

840 (5th Cir. 2010) (Title VII).  Thus, the Fifth Circuit in Brown

found that the plaintiff's complaint to his employer about "unfair

work distribution, unpaid overtime, and selective enforcement of a

lunch policy" was not protected activity because the employee "did

not complain about race, color, religion, sex, or national origin

discrimination."  Id.  Likewise, in the case at bar, while it is

undisputed that plaintiff complained to Anderson about her pay,

she did not complain that she was being paid less than Campbell

because of her gender or race.  Plaintiff did testify in her

deposition that she asked Anderson if she was paid less than

Campbell because of her "status".  However, she acknowledged that

Anderson would not have known what she meant by "status", which

could have referred to any number of things other than her gender,

16

race, or any other protected characteristic. Accordingly, based on the undisputed facts, her claim for retaliation fails as a matter law.

Hostile Work Environment:

In her complaint, plaintiff purports to assert a "race-based hostile work environment claim" under Title VII and § 1981 based on allegations that "[m]anagement of the Defendants" – presumably Anderson and Campbell – "wanted to force [her] to leave the employment of Defendants", yet when she would not resign, they "falsified a reason to terminate her employment" and then afterward, Anderson "libel[ed], slander[ed] and defam[ed]" to the Mississippi Employment Security Commission in an attempt to prevent her from receiving unemployment benefits. She alleges that Queen City knew about this harassment and failed to take effective action to stop it. However, plaintiff has offered no evidence that defendants manufactured or falsified the reason cited for her termination.

In addition to the allegations of the complaint relating to her hostile work environment claim, plaintiff testified by deposition that she was subjected to a hostile work environment because (1) Anderson once commented that then newly-elected President Trump was "the best"; (2) Anderson was more supportive of Campbell's taking a vacation than he was of her taking a vacation; (3) Anderson allegedly called her "the black sheep of

the company"; (4) Anderson and Campbell asked her questions about her education and "seemed shocked" that she was a college graduate; (5) Anderson, Campbell and Davis occasionally held "side bar meetings" without her; (6) Campbell called an African-American employee "stupid"; (7) a coworker told her that Campbell "never liked" her; and (8) Campbell yelled at her and pointed his finger at her on two occasions.

To establish a hostile working environment claim, plaintiff must prove that "(1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race (or sex); (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted). "For harassment on the basis of race to affect a term, condition, or privilege of employment, ... it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Id. (quoting Harris v. Forklift Systems, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). "In determining whether a hostile work environment exists, courts consider the 'totality of the circumstances,' including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or 'a mere offensive

utterance,' and whether it interferes with the employee's work performance." Gibson v. Verizon Servs. Org., Inc., 498 F. App'x 391, 394-95 (5th Cir. 2012) (citing Ramsey, 286 F.3d at 268).

Here, plaintiff has offered no *evidence*, but only her subjective belief, that any of Anderson's or Campbell's alleged conduct was "based on" her race (or sex). Her belief is not sufficient to sustain her burden. See id. (quotation omitted) (reiterating that "'conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy'" the nonmovant's burden in a motion for summary judgment, and holding that employee's subjective belief that challenged conduct was based on her race or sex was not sufficient to avoid summary judgment on hostile work environment claim). Accordingly, summary judgment will be granted as to this claim.[4]

IV. State Law Claims

Intentional Infliction of Emotional Distress:

Plaintiff alleges that "the conduct of Defendants' ... management team was intentional and calculated to cause her emotional distress." As she does not specify the conduct to which

_____

[4] The court would add that even if all of the alleged conduct were supported by competent proof and by proof from which it could be reasonably inferred that the alleged conduct was motivated by her race (or sex), the conduct she has alleged, considered in total, plainly does not rise to the level of sufficiently "severe" or "pervasive" to constitute a hostile work environment.

she refers, the court assumes she bases this claim on the same alleged conduct she has cited in support of her hostile work environment claim. The evidence, viewed in the light most favorable to plaintiff, does not support a finding of liability for intentional infliction of emotional distress.

To prevail on a claim for intentional infliction of emotional distress under Mississippi law, the challenged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Speed v. Scott, 787 So. 2d 626, 630 (Miss. 2001). "[L]iability does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." Jones v. Jackson State Univ., No. 3:07-CV-72-DPJ-JCS, 2008 WL 682411, at *5 (S.D. Miss. Mar. 7, 2008) (quoting Raiola v. Chevron U.S.A., Inc., 872 So. 2d 79, 85 (Miss. Ct. App. 2004)). Regardless of a defendant's intent, unless the conduct at issue is extreme and outrageous, no cause of action will lie. Dandridge v. Chromcraft Corp., 914 F.Supp. 1396, 1405 (N.D. Miss. 1996) (quoting Burroughs v. FFP Operating Partners, L.P., 28 F.3d 543, 546 (5th Cir. 1994)) (it is "not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been

characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.").

"A claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes." Lee v. Golden Triangle Planning & Dev. Dist., Inc., 797 So. 2d 845, 851 (Miss. 2001). "Only in the most unusual cases does the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous, as required for the tort of intentional infliction of emotional distress." Prunty v. Arkansas Freightways, Inc., 16 F.3d 649, 654-55 (5th Cir. 1994) (quotation omitted). Indeed, "'[r]ecognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time.'" Peques v. Emerson Elec. Co., 913 F. Supp. 976, 982-83 (N.D. Miss. 1996) (quoting White v. Monsanto Co., 585 So. 2d 1205, 1210 (La. 1991)). This is not such a case. Accordingly, this claim will be dismissed.

### Defamation/False Light Invasion of Privacy

Plaintiff bases her claims for defamation and false light invasion of privacy on allegations that Queen City falsely reported to the MDES in connection with her claim for unemployment benefits that she was terminated for "violating company policy by colluding election (sic) of Employee of the Year"; that when she

21

applied for employment with Fairfield Inn following her termination from HGI, Queen City reported to Fairfield Inn the alleged false reason for her termination; and that Anderson told another HGI employee that she was a "thief". Plaintiff offers only speculation and hearsay – not competent proof – to support the latter two allegations. And as to the first, Queen City's alleged statement to the MDES is protected by privilege. To prevail on a claim of defamation, plaintiff must prove that defendants made "(1) a false and defamatory statement, (2) unprivileged publication to a third party, (3) negligence on the part of the employees in publishing the statement, and (4) there is either actionability of the statement irrespective of special harm or existence of special harm caused by publication." Raiola, 872 So. 2d at 84-85 (citation omitted). To succeed on a claim for invasion of privacy through publicity placing a person in a false light requires proof that "[1] the false light in which [she] was placed would be highly offensive to a reasonable person, and [2] the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Cook v. Mardi Gras-Casino Corp., 697 So. 2d 378 (Miss. 1997).

Under Mississippi law, an employer's communications with the MDES relating to an employee's claim for unemployment benefits are "absolutely privileged" and may not be made the basis for any

22

defamation suit "unless the same be false in fact and maliciously written, sent, delivered or made for the purpose of causing a denial of benefits...." Miss. Code Ann. § 71-5-131. Plaintiff does *allege* that Queen City's statement to the MESC was both false and maliciously made to prevent her receiving benefits, but as discussed *supra*, she has no evidence to show that defendants acted other than in good faith and without malice. This claim will be dismissed.

<u>Negligent Infliction of Emotional Distress</u>

Plaintiff purports to assert a cause of action for negligent infliction of emotional distress based on Queen City's having stated to the MDES that she was terminated for rigging the Associate of the Year vote. This claim also fails as a matter of law as Queen City's statements were protected by privilege.[5]

V. <u>Conclusion</u>

Based on the foregoing, it is ordered that defendants' motion is denied as to plaintiff's claim for wage discrimination, and in all other respects, is granted.

SO ORDERED this 10th day of July, 2019.


/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[5]     The court reiterates that while the privilege can be lost if the employer acts with malice, (a) there is no proof of malice, <u>see</u> *supra*, and (b) negligence is not malice.